UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| GEORGE BURKE, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-0118 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

After unsuccessfully seeking state appellate and habeas relief, Texas inmate George Burke filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Docket Entry No. 1). Respondent Lorie Davis moves for summary judgment, arguing that Burke's claims are without merit and that he is not entitled to relief. (Docket Entry No. 7). Burke has not filed a response. After reviewing the record, the pleadings, and the applicable law, with special consideration given to the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") deferential standard of review, the Court will grant Respondent's motion for summary judgment and deny Burke's petition. The Court will not certify any issue for appellate review.

The Court sets forth the reasons for its adjudication below.

**BACKGROUND**

In 2012, the State of Texas charged Burke with sexual assault of a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011(2). Burke stood trial in the 130th District Court of Matagorda County, Texas, under cause number 13-080. Attorney Bill F. Leathers represented Burke at trial. On direct appeal, the state appellate court summarized the facts of the crime for which Burke was convicted as follows:

On August 17, 2012, 15-year-old BT told her parents that her uncle, Burke, had sexually assaulted her the day before at his home in Matagorda County. She testified that while on family vacation, she visited her uncle's home to spend time with Burke's step-daughter and spent the night. The following morning, BT's aunt and cousin left to attend a school event, leaving Burke and her at the home. Burke told BT to enter a bedroom, followed her into the bedroom, forced her to undress, and sexually assaulted her. She said he pulled her to the edge of the bed and touched her genital organs with his hands and mouth. Additionally, Burke assaulted her by putting his penis in her vagina. BT stated that, as she dressed after the assault, she was in shock, shaking and crying. Due to her emotional state, she said she did not know what to do and did not tell anyone about the assault until two days later.

BT made an outcry about the incident when she later reunited with her parents. Her parents immediately left Matagorda County and took BT to the hospital in their hometown of Arlington, Texas. They took their daughter to Arlington Memorial Hospital for a sexual assault examination, but were told that because of her age, she needed to be seen at Cook Children's Hospital, also in Arlington. BT's parents also filed a police report with the Arlington Police Department that same day. The following morning, BT was examined by Jayne Coffman, M.D., at the Cook Children's Hospital and a sexual assault exam was performed. Evidence was collected during that examination and was turned over to the Tarrant County Medical Examiner's Crime Lab by the Arlington Police Department.

The Arlington Police Department proceeded with an investigation into the sexual assault. On August 21, BT was seen at the Alliance for Children Child Advocacy Center and interviewed by Joy Hallum, a forensic interviewer. Once the Arlington Police Department completed its part of the investigation, they forwarded the police and medical reports to the Matagorda County Sheriff's Office.

Following the receipt of the Arlington Police Department's file, Sergeant James Orr of the Matagorda County Sheriff's Office attempted on multiple occasions to make contact with Burke, but only reached him by phone. An arrest warrant was eventually issued for Burke. Orr also executed a DNA search warrant. The DNA that was collected from Burke was sent off to the Tarrant County Medical Examiner's Crime Laboratory for comparison with the DNA collected from BT. On September 27, the DNA report from the crime lab confirmed that Burke's semen was found in BT's vagina.

BT, law enforcement officers, medical staff, and the crime lab scientists testified at trial. The defense did not call any witnesses and the appellant did not testify. The jury found Burke guilty as charged.

*Burke v. State*, 2015 WL 1869417, at *1-2 (Tex .App .-Corpus Christi, 2015).

During a separate punishment phase, Burke pleaded "true" to prior felony convictions: (1) a 1991 burglary of a habitation charge and (1) a 1992 burglary of a habitation charge. As a habitual felon, Burke faced a minimum sentence of twenty-five years confinement. The jury sentenced Burke to ninety-nine years' imprisonment.

Through new counsel appointed for appeal, Burke filed a motion for new trial alleging that trial counsel provided deficient representation by: only meeting with him briefly before trial, not interviewing witnesses (specifically Burke's wife, daughter, father, mother, siblings, employer, and school personnel), not requesting a second DNA test, not seeking the assistance of a DNA expert, and not calling any witnesses. Burke supported his motion with affidavits from some of the individuals who he says trial counsel should have called to testify. Clerk's Record at 72-80. The trial court conducted an evidentiary hearing in which witnesses, including trial counsel, testified. Tr. Vol. 7. The trial court denied the motion for a new trial. Clerk's Record at 82.

Burke appealed and raised the same allegations against trial counsel contained in his motion for a new trial. The intermediate state appellate court affirmed Burke's conviction. *Burke v. State*, No. 13–13–00520–CR, 2015 WL 1869417, at *7−8 (Tex. App.—Corpus Christi 2015, no pet.). Burke did not file a petition for discretionary review.

Burke then filed a state habeas application pursuant to TEX. CODE CRIM. PRO. art. 11.07. Burke reiterated his earlier prior complaints of ineffective legal assistance, but also argued that trial counsel did not act on his offer to take a polygraph test. Without holding a hearing, the trial court refused to designate any issue for factual development. State Habeas Record at 32-34. The Texas Court of Criminal Appeals denied habeas relief on the lower court's findings without entering a written order.

Burke filed a timely federal petition raising one ground for relief that again challenged trial counsel's representation. Reiterating the complaints he raised in state court, Burke argues that his attorney did not spend enough time with him before trial, should have investigated and called various potential witnesses, should have sought an expert in DNA and asked for retesting, and did not conduct an adequate investigation. (Docket Entry No. 1). Respondent seeks summary judgment. (Docket Entry No. 7). Burke has not filed any reply and the time to do so has expired. This matter is ripe for adjudication.

## LEGAL STANDARDS

The writ of habeas corpus provides an important, but narrow, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "Society's resources have been concentrated at [a criminal trial] in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *see also McFarland v. Scott*, 512 U.S. 849, 859 (1994) (stating that a "criminal trial is the 'main event' at which a defendant's rights are to be determined"). The States, therefore, "possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights." *Engle v. Isaac*, 456 U.S. 107, 128 (1982). As "a foundational principle of our federal system," state courts "are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing AEDPA's "presumption that state courts know and follow the law"). Given this required deference to the state-court system, several principles circumscribe both the nature of federal habeas review and the availability of federal habeas relief.

If the inmate has presented federal constitutional claims to the state courts in a procedurally proper manner, and the state courts have adjudicated their merits, AEDPA provides for a deferential federal review. "[A] habeas petitioner has the burden under AEDPA to prove that he is entitled to relief." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000); *see also DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002). Under AEDPA's rigorous requirements, an inmate may only secure relief after showing that the state court's rejection of his claim was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2).

To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 572 U.S. 415. 419-20 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exist only to "guard against extreme malfunctions in the state criminal justice systems . . . ." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376 (2015) (quotation omitted). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 572 U.S. at 419-20 (quoting *Richter*, 562 U.S. at 103); *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

*Strickland v. Washington*, 466 U.S. 668 (1984). represents the clearly established federal law in this case. "To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'" *Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). "Surmounting *Strickland*'s high bar is never an easy task[.]" *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). When the state courts have already adjudicated the merits of a *Strickland* claim, "[a] state court must be granted deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 88. Under the AEDPA, federal courts employ a "doubly deferential judicial review," that gives wide latitude to state adjudications. *Knowles*, 556 U.S. at 123; *see also Cullen v. Pinholster*, 563 U.S. 170, 202-03 (2011). "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

Respondent moves for summary judgment. Summary judgment is proper when the record shows "that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). AEDPA, however, modifies summary judgment principles in the habeas context. *See Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010) ("Summary judgement in federal habeas is different than in the average civil case."); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (Rule 56 "applies only to the extent that it does not conflict with the habeas rules"), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004). For example, § 2254(e)(1) mandates that a state court's findings are presumed to be correct and overrides the summary judgment rule that all disputed facts must be construed

in the light most favorable to the non-movant. *Smith*, 311 F.3d at 668. Unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See* 28 U.S.C. § 2254(e)(1).

Burke represents himself. Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as are pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (quotation omitted). Accordingly, "[t]he filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id*.

## ANALYSIS

### I. Adequate Time to Prepare for Trial

Burke's first *Strickland* argument faults trial counsel for "spen[ding] less th[an] two hours with [him] before trial." (Docket Entry No. 1 at 6). Even assuming that to be true, the amount of time an attorney spends with his client, by itself, does not raise a constitutional issue. "[B]revity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel." *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984); *see also Castillo v. Stephens*, 640 F. App'x 283, 289 (5th Cir. 2016); *Mattheson v. King*, 751 F.2d 1432, 1439 (5th Cir. 1985). Allegations of inadequate time spent by a defense attorney are only relevant to the extent they inform questions about his ability to develop additional evidence or defenses. *See Schwander v. Blackburn*, 750 F.2d 494, 499 (5th Cir. 1985). The state courts, therefore, were not unreasonable for denying *Strickland* arguments relating to the amount of time trial counsel spent of Burke's case. *See* 28 U.S.C. § 2254(d)(1).

### II. Interviewing and Calling Potential Witnesses

In his motion for a new trial, Burke argued that trial counsel provided ineffective

representation by not calling several witnesses. Burke, however, only supported his allegations with affidavit or hearing testimony from: his wife, Sharla Burke, Clerk's Record at 72-73, Tr. Vol. 7 at 29-33; his father, Stoney Burke, Clerk's Record at 74, Tr. Vol. 7 at 42-46; his mother, Virginia Burke, Clerk's Record at 75; his wife's mother, Betty McMullen, Clerk's Record at 76; his step-daughter, Ashley Oncken, Clerk's Record at 77, Tr. Vol. 7 at 33-38 ; and Burke himself, Clerk's Record at 78-80, Tr. Vol. 7 at 47-54. On federal review, Burke renews his complaint that trial counsel did not call those witnesses, and others.

As an initial matter, the Court observes that Burke has not identified, much less provided a verifiable account of the potential testimony from, several individuals who he argues should have testified at trial. In addition to those witnesses whose testimony he substantiated, Burke argues that trial counsel should have presented testimony from Burke's employer, unnamed coworkers, a counselor at the victim's high school, the medical examiner, and other unidentified individuals. Burke, however, has not shown how they could have aided the defense had trial counsel investigated their potential testimony. A habeas petitioner challenging his trial attorney's punishment investigation "must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005); *see also Greer v. Thaler*, 380 F. App'x 373, 386 (5th Cir. 2010); *Carty v. Quarterman*, 345 F. App'x 897, 903 (5th Cir. 2009). An inmate cannot only allege that his attorney should have called more or different witnesses. He "must name the [uncalled witnesses] witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). Constitutional error cannot rest on the naked assertion that trial counsel should

have done more, for "speculations as to what [uncalled] witnesses would have testified is too uncertain." *Alexander*, 775 F.2d at 602; *see also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) ("[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative.").

With regard to the witnesses who provided affidavits and hearing testimony, the intermediate state appellate court found no *Strickland* error in the failure to call them as witnesses:

> Burke alleges his trial counsel did not interview any witnesses prior to their testimony, did not go to Burke's home or other locations where he was on the day of the alleged offense, and did not interview or call any potential defense witnesses. Trial counsel cross-examined multiple witnesses involved in the investigation, both locally and from the Arlington area. Prior to the start of trial, trial counsel viewed their reports in the State's file. Burke does not explain how on top of all of this, any additional pre-trial interviews would have changed the outcome of the proceeding.
>
> Trial counsel articulated at the motion for new trial hearing why he did not call any witnesses:
>
>> [State]: Was there—what—for what reasons would you choose not to interview those people [referring to defendant's family]?
>>
>> [Trial Counsel]: To my knowledge, there was never any factual basis to go ask them about anything because the—the report—the allegation was that this sexual assault had occurred when there was nobody but the defendant and [BT], nobody else around. There was nobody that could provide an alibi.
>
> Trial counsel stated during direct examination that he did not interview or call Burke's family as witnesses (other than Burke's step-daughter, who was a witness for the State) because in his opinion, "it would not have helped." Trial counsel did not feel anyone else could have helped him develop a defensive trial strategy. Burke himself was unable to explain concrete evidence to trial counsel, such as how his DNA was found in BT's vagina.
>
> Even though Burke claims other evidence could have been in existence, "defense counsel could have reasonably determined that the potential benefit of additional witnesses or evidence was outweighed by the risk of unfavorable counter-testimony." *Bone v. State*, 77 S.W.3d at 835. This analysis is appropriate in this

case. "If a reviewing court can speculate about the existence of further mitigating evidence, then it just as logically might speculate about the existence of further aggravating evidence." *Id.* Trial counsel stated during the motion for new trial hearing that he did not call Burke's other family members because he was afraid of "opening the door" to admission of possible detrimental conversations, such as recorded jail conversations between Burke and his wife that he knew were in the State's possession. This would seem to be reasonable trial strategy in trying to keep out possible detrimental evidence against his client. Therefore, Burke does not meet the first prong of *Strickland*. *See Strickland*, 466 U S. at 668.

*Burke*, 2015 WL 1869417, at *3.

While Burke may now disagree with the defense provided by his attorney, strategic decisions by counsel are "virtually unchallengeable" and generally do not provide a basis for post-conviction relief. *Strickland*, 460 U.S. at 689. Burke could only overcome the heavy deference paid trial counsel's decisions by showing that it was "so ill chosen that it permeate[d] the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002). Burke's proposed witnesses do not give any direct testimony about the crime. The witnesses do not provide any testimony other than to describe their observations of the victim around the time of the crime and to opine on Burke's general character. That testimony, however, reconfirms that Burke and the victim were alone when he raped her. Their testimony also comes with certain problems. For instance, trial counsel feared that, if Burke's wife had been called as a witness, the State would show on cross-examination that she had concocted an unbelievable, and prejudicial, story to explain the presence of Burke's semen in the victim's vagina. Tr. Vol. 7 at 19. The state courts could reasonably find that trial counsel made a reasonable decision not to call additional witnesses.

The state habeas court further found that Burke had not shown *Strickland* prejudice. State Habeas Record at 34. The results of DNA testing that confirmed the presence of Burke's semen in the victim's vagina further forecloses the possibility of *Strickland* prejudice. The

proposed testimony adds little to the evidentiary picture other than to show that the victim's demeanor after the crime was inconsistent with her outcry. Still, that does not lessen the effect of scientific testimony proving that Burke had engaged in sexual relations with his niece. Notwithstanding any deficiency in counsel's investigation and presentation of witnesses, Burke has not shown a reasonable probability of a different result.

### III. DNA Testing and Expert

Burke faults trial counsel for not retaining a DNA or medical expert to help interpret the testing results. Burke also alleges that trial counsel should have asked for the DNA to be retested. Trial counsel testified that, as part of his overall strategy, he wanted "throw some dirt, some smoke, some doubt about the DNA process." Tr. Vol. 7 at 11. The state appellate court, however, found that Burke had not shown any *Strickland* error in not seeking retesting or a DNA expert because Burke only provided speculation into what additional inquiry along those lines would reveal. *See Burke*, 2015 WL 1869417, at *3-4.

As with Burke's other ineffective-assistance-of-counsel arguments, he must allege with specificity what such an investigation would have revealed and how it could have altered the outcome of the trial. *See Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). Burke offers only speculation regarding the possible benefits and testimony of a DNA expert witness at trial. He does not identify any particular expert witness, actual information, or expert opinions that could have been offered and would have been useful to his defense. With that absence of substantiation, Burke has not shown that the state court's rejection of his DNA arguments was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

### IV. Adequate investigation.

Finally, Burke contends that trial counsel did not conduct an adequate investigation.

Burke argues that trial counsel only reviewed the prosecutor's file and did not conduct any other discovery. The state appellate court denied this claim because Burke had not specified what other investigation counsel should have conducted and what the results would have been:

> Burke asserts that his trial counsel only reviewed the State's file and conducted no other discovery. Burke's trial counsel stated during the motion for new trial hearing that he did review the discovery within the State's file. Burke does not expand on what testimony he was wanting to be brought forth from any witnesses or additional discovery. We apply a "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson,* 9 S.W.3d at 813. Without an expansion on what discovery Burke was requesting, trial counsel's performance was not deficient. Burke does not meet the first prong of *Strickland. Strickland,* 466 U.S. at 694.

*Burke*, 2015 WL 1869417, at *3.

In order to prevail on an ineffective assistance claim for failing to investigate, a habeas petitioner must state with specificity what the investigation would have revealed and how the evidence would have altered the outcome of the trial. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).[1] Additionally, the petitioner must show under *Strickland* that his attorney's failure to investigate caused him actual prejudice—that is, but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different. Burke does not allege with specificity what further investigation would have revealed and how it would have altered the outcome of the case. *Id*. at 1003. That is, he fails "to suggest with specificity what exculpatory evidence could have been uncovered by a more thorough investigation by [his] counsel, and has failed to show that counsel's [purported] failure to follow up on [his] leads was unreasonable." *Id.* at 1002. Accordingly, the state court's rejection of this

---

[1] Burke argues that trial counsel was specifically ineffective for not investigating the victim's background, seeking out lunch receipts from the day of the offense, or learning anything about his employment at the time of his offense. Respondent argues that Burke did not put those factual arguments before the state courts, rendering them unexhausted. (Docket Entry No. 7 at 6). Even if Burke did not exhaust those arguments, he does not substantiation of what investigation into those areas would have revealed and how it would have changed the result of his trial. *See* 28 U.S.C. § 2254(b)(2) (allowing for a court to deny meritless unexhausted claims).

claim was not contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

## CERTIFICATE OF APPEALABILITY

Under AEDPA, a prisoner cannot seek appellate review from a lower court's judgment without receiving a Certificate of Appealability ("COA"). *See* 28 U.S.C. § 2253(c). McCarter has not yet requested that this Court grant him a COA, though this Court can consider the issue *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal." *Slack v. McDaniel*, 529 U.S. 473, 482 (2000). A court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Supreme Court has explained the standard for evaluating the propriety of granting a COA on claims rejected on their merits as follows: "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. On the other hand, a district court that has denied habeas relief on procedural grounds should issue a COA "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional McCarter right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. Unless the prisoner meets the COA standard, "no appeal would be warranted." *Slack*, 529 U.S. at 484.

Having considered Burke's petition, and in light of AEDPA's standards and controlling precedent, this Court determines that a COA should not issue on any claim.

## CONCLUSION

For the reasons described above, the Court **GRANTS** Respondent's motion for summary judgment, **DENIES** Burke's petition, and **DISMISSES** this case **WITH PREJUDICE**. All other requests for relief are **DENIED**. The Court will not certify any issue for appellate review.

The Clerk will provide copies of this order to the parties.

SIGNED at Galveston, Texas, this 28th day of August, 2018.

_George C. Hanks Jr._
George C. Hanks Jr.
United States District Judge